UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EDDIE L. NABORS,

    Plaintiff,

v.                                      CASE NO.

THE GEO GROUP, INC., a
  Florida Corporation,

KENNETH W. DAVIS, an            COMPLAINT OF FEDERAL CIVIL
  individual,                               RIGHTS VIOLATIONS BROUGHT
                                        PURSUANT TO 42 U.S.C. 1983 AND
JASON R. TYUS, an                1988
  individual,

JEFF SNELL, JACKSON COUNTY,
FLORIDA DEPUTY SHERIFF
in his individual capacity,                 JURY TRIAL DEMANDED

and

JOHN P. McDANIEL FORMER
JACKSON COUNTY, FLORIDA
SHERIFF, in his individual capacity.

    Defendants.
_____/

Introduction

1. This is an action for money damages brought pursuant to 42 U.S.C. 1983 and 1988, and the Fourth and Fourteenth Amendment to the United States

1

Constitution.

2. It is alleged that the individual defendants Kenneth W. Davis, Jason R. Tyus, and unknown prison manager employees of The Geo Group, Inc.–the latter entity being a private prison company contracting with the Florida Department of Corrections and operating a prison in Jackson County, Florida-- and Deputy Sheriff Jeff Snell of the Jackson County Sheriff's Office all made, or caused to be made, an unreasonable seizure and search of Plaintiff's person violating his rights otherwise protected by the Fourth and Fourteenth Amendment to the U.S. Constitution.

3. The GEO Group, Inc. violated Plaintiff's rights otherwise protected by the Fourth and Fourteenth Amendment by (1) being deliberately indifferent to Plaintiff's federal constitutional rights by providing inadequate employee training to Kenneth W. Davis and Jason R. Tyus, (2) in acquiescing to, and ratifying, the unconstitutional conduct of its employees Kenneth W. Davis and Jason R. Tyus in this matter, and (3) by unknown other managers of The Geo Group, Inc. participating in the decisionmaking to seize and search Plaintiff Nabor's person inside the prison and then call the Sheriff's office and turn Nabor's custody over to Deputy Sheriff Jeff Snell and Sheriff John P. McDaniel..

4. Deputy Sheriff Jeff Snell violated Plaintiff's Fourth and fourteenth Amendment protected rights when he seized and searched Plaintiff's person and

personal effects without a warrant and without having any probable cause.

    4.1   Former Jackson County, Florida, Sheriff Joseph P. McDaniel violated Plaintiff's Fourth And Fourteenth Amendment protected rights when he intentionally, or in the alternative recklessly, failed to provide to the assistant state attorney prosecuting Plaintiff Eddie L. Nabors, or to Nabors, information and evidence highly material and exculpatory which would have resulted in Nabors being free of criminal charges and free of State custody approximate one month after his initial arrest by the Deputy Sheriff Jeff Snell instead of ten months after his initial arrest which is when Plaintiff was in fact released from the State's and the Sheriff's custody.

    5.   The wrongdoing described in this complaint injured Plaintiff as follows:

(1) loss of his chosen employment and advancement to high levels of management in his chosen employment, which is permanent;

(2) loss of employment and advancement to higher levels of employment even out of his chosen field of employment;

(3) loss of reputation that is permanent;

(3) loss of income and employment benefits that is permanent;

(4) loss of enjoyment of life to the level it was prior to his wrongful seizure and arrest which is permanent;

3

(5) suffering severe mental anguish (including, but not limited to, feeling shame which is not deserved but felt anyway) which is permanent;

(6) loss of sense of security which is permanent;

(7) attorney fees ($3,500) and other costs of his criminal defense in the matter of his wrongful arrest;

(8) loss of freedom for ten months Plaintiff was in custody of Geo and then the State of Florida;

(9) and other general damages.

### Jurisdiction and Venue

6. Jurisdiction is based upon 28 U.S.C. 1331 and 1343(a)(3).

7. The events took place in Jackson County, Florida at the privately operated Graceville area prison in Jackson County, Florida pursuant to a with the Florida State Department of Corrections which put The Geo Group, Inc. in the charge of State of Florida prisoners.

### Parties

8. Plaintiff Eddie L. Nabors is an individual who, at all times relevant to this complaint, resided in Marianna, Florida in Jackson County, Florida.

9. Defendant The GEO Group, Inc. is a Florida Corporation whose current principal address is 621 NW 53rd Street, #700, Boca Raton, FL 33487 .

10. The whereabouts of Defendants Kenneth W. Davis and Jason R. Tyus, is at present unknown but believed to be in Florida.

11. At the time of the events described in this complaint Kenneth W. Davis and Jason R. Tyus were employees of The GEO Group, Inc. working within the course and scope of their said employment at its Graceville prison facility and in that facility's chain of command as Captain and Lieutenant respectively.

12. Jackson County Deputy Sheriff Jeff Snell at all times relevant to this complaint was the Jackson County Florida Deputy Sheriff.

13. Former Jackson County, Florida Sheriff John P. McDaniel's whereabouts at the present time are undisclosed but are believed to be in Jackson County, Florida.

14. All defendants were at all times relevant to this complaint acting under color of Florida law.

14.1. Plaintiff is entitled to a reasonable attorney fee and costs pursuant to 42 U.S.C. 1988.

## Other Facts

15. On 1 November 2007, Plaintiff entered the private prison of The GEO Group, Inc. in Graceville, Florida at about 7:30AM to begin his day's work as a classification officer.

16. Plaintiff was moving forward in the line employees at the employee entrance to the prison with other workers all of whom were required to, and did, pass by a GEO officer who was operating an ION SCAN device which consisted of a computer-like-looking electronic box with a wand attachment.

17. The ION SCAN machine was a newly installed and newly used device at the prison.

18. One of the purposes of the machine was to test some, but not all, of the employees entering the prison for the presence of illegal drugs and substances that were contraband at the prison.

19. A test consisted of the ION SCAN operator placing the wand on, and moving the wand around, the body of the person being tested, and this is how Plaintiff was tested on 1 November 2007 on his way into work.

20. As Nabors made his entrance in line with others entering work that day, the operator of the ION SCAN machine pointed to Plaintiff and asked Captain Davis, who was standing near the testing machine, "Should I test him?" and Captain Davis stated, "Yes."

21. Only those persons so selected, as described above, were tested, if in fact anybody else was tested that day.

22. There was no reasonable suspicion to believe that Plaintiff had

committed a crime or was about to commit a crime, and there was no probable cause to believe that Plaintiff had committed a crime (1) at the time he was selected from the entrance line on 1 November 2007 to be tested nor (2) at any other time that is relevant to this complaint.

23. Plaintiff was not picked at random from the employee entrance line to be tested.

24. After the ION SCAN operator went over Nabors' person with the testing wand, Captain Davis said that they, Captain Davis and Lieutenant Tyus, had to search him and ordered him to accompany them into the men's bathroom, which Nabors did do.

25. At this point, Davis and Tyus had taken Nabors into their custody where he remained until Davis and Tyus gave custody of Nabors to Jackson County, Florida Deputy Sheriff Jeff Snell who had been called to the prison by either Davis, Tyus or some other GEO Group, Inc. Manager employee.

26. While in Davis', Tyus', and Geo's custody in the men's bathroom, Davis directed Nabors to empty his pockets and take his shoes and pants belt off and pull his shirt out of his pants, which Plaintiff did.

27. Davis put his hands under Plaintiff's shirt and Davis used his hands to feel around Nabors' bare waist area.

28. At the same time, Tyus was searching Plaintiff's shoes and the personal effects that Plaintiff had taken out of his pockets and placed on the bathroom counter.

29. No illegal drugs or contraband was found during the bathroom search of Plaintiff's person.

30. Next, Davis and Tyus took Plaintiff out to his car in the parking lot in the prison employee parking lot, and they searched Plaintiff's car without his knowing and voluntary consent (emphasis placed here on the word "voluntary").

31. No one found any illegal drugs in Plaintiff's car.

32. Davis and Tyus in reckless disregard of Plaintiff's federal consitutional rights falsely claimed and reported to the public that they found cocaine in Plaintiff's car.

33. Plaintiff was taken back into the prison where he was ordered to sit on a chair in a hallway for several hours, which he did, and where Plaintiff's fellow employees saw him in custody of his employer The GEO Group, Inc, Davis, and Tyus; he was not free to leave but under arrest by The Geo Group, Davis, and Tyus.

34. After a couple of hours of sitting, Plaintiff saw Jackson County Deputy Sheriff Jeff Snell, accompanied by a drug sniffing dog, pass him in the prison hallway, where Plaintiff was ordered to stay, on his way to the administrative offices

of the prison; the dog did not alert to any thing as he and Snell passed Plaintiff in the hallway.

35. Co-workers passed by Nabors many times as he sat in custody in the hallway, and they asked him what he was doing there.

36. About ten minutes after Deputy Snell passed Nabors and went into the main administrative office of the prison facility, Deputy Snell came back out and told Nabors that he was under arrest for drugs, and he placed handcuff's on him as some of his fellow workers watched.

37. At being handcuffed, Plaintiff got chocked up, could not think, was scared, and wanted to cry but could not.

38. Deputy Snell took Plaintiff into his custody and to jail, and did so at the direction of GEO management.

39. Plaintiff was in jail over night, and then let out on his own recognizance the next day.

40. Plaintiff's arrest for cocaine possession was reported in the newspaper next to his photograph, and on TV.

41. As a result of the above, Plaintiff suffered the injuries described in paragraph 5 above.

42. Plaintiff had to hire a criminal defense attorney to defend him from the

false charges.

43. Plaintiff remained out on bail, paying a fee each month to the State, until approximately 12 September 2008 when Assistant State Attorney Henry M. Sims dismissed his case against Plaintiff upon his receiving from someone, unknown to the Plaintiff, an FDLE letter addressed to, and received by, Sheriff John P. McDaniel on or about 17 December 2007 stating that the substance tested, and regarding the alleged 1 November 2007 drug offense, was not an illegal drug.

44. The above mentioned material exculpatory letter or lab report from the FDLE to Sheriff McDaniel was received by the Sheriff on approximately 17 December 2007.

45. In not providing to the assistant state attorney or to the Plaintiff the highly material and exculpatory lab report, the Sheriff acted intentionally to deny Plaintiff his Fourth and Fourteenth Amendment protected right to (a) be free of unreasonable seizure and search and (b) his liberty save due process of law, or else acted in reckless disregard of these rights, when Sheriff McDaniel did not provide to the State Prosecutor and to Plaintiff the FDLE report which reported to the Sheriff on 17 December 2007 that the alleged cocaine removed from Plaintiff's car in the prison parking lot was not cocaine as Plaintiff declared to Officer Snell on the date of Plaintiff's arrest and as declared by Plaintiff to the prosecuting attorney

many times thereafter.

46. As of the date the Sheriff received the letter of Pliantiff's exoneration from the FDLE, the Sheriff knew, or should have known, that he never had probable cause to detain Plaintiff, yet he intentionally or with deliberate indifference, or in reckless disregard of Plaintiffs Fourth and Fourteenth Amendment protected right to liberty save due process of law, continued the detention of Plaintiff long afterwards thereby unconstitutionally causing Plaintiff to remain in the custody of the State of Florida for approximately nine hold-over months in violation of Plaintiff's Fourth and Fourteenth Amendment protected right to be free of custody save due process of law.

47. The unconstitutional search and seizure by Deputy Sheriff Jeff Snell was a foreseeable consequence of the wrongful search and seizure caused by (1) The Geo Group, Inc's inadequate training of its employees, including but not limited to, defendants Davis and Tyus, (3) acquiesence of The Geo Group, Inc. in Plaintiff's original arrest by Geo emplouyees, subsequent arrest by deputy Jeff Snell's, and then in the State's and Sheriff's hold-over of Plaintiff's custody, and (3) the Plaintiff's wrongful search and seizure by defendants Davis and Tyus and other Geo managers.

48. So too foreseeable at the time of the above described Geo Groups, Inc.'s

and Davis' and Tyus' violation of Plaintiff's Fourth and Fourteenth Amendment rights, as above described, was Plaintiff's subsequent unconstitutional violation of those same rights by Sheriff John P. McDaniel who failed timely to provide Assistant State Attorney Sims or Plaintiff with the material exculpatory letter from the FDLE.

## COUNT I–THE GEO GROUP, INC

In this count Plaintiff Eddie L. Nabors sues The GEO Group, Inc.

49. This count incorporates paragraphs 1-48 restated herein by reference.

50. The GEO Group, Inc. violated Nabors' Fourth and Fourteenth Amendment protected right to be free of unreasonable search and seizure by intentionally, or in the alternative, recklessly, not providing its employees, including Davis and Tyus, with adequate training in the use of the ION SCAN testing device and in other proper procedures for seizing and searching its employees' persons and effects so that the testing and other procedures would not violate its employees, and Nabors', Fourth and Fourteenth Amendment right to be free of unreasonable searches and seizure by persons under color of law.

51. The Geo Group, Inc. violated Nabors' Fourth and Fourteenth Amendment protected right to be free of unreasonable seizure and search by acquiescing in Nabors' unreasonable search and seizure by its employees and by

12

unreasonably causing Deputy Sheriff Jeff Snell to seize Nabors and to search his person, personal effects, automobile, and automobile contents all without voluntary consent.

52. The Geo Group, Inc. violated Nabors' Fourth and Fourteenth Amendment protected right to be free of unreasonable search and seizure by having a company policy or custom of searching and seizing its employees', including Nabors', persons and personal effects which when executed by employees, including Davis and Tyus in this case, results and resulted in a violation of Nabors' Fourth and Fourteenth Amendment protected right to be free of unreasonable search and seizure.

53. Reasonable foreseeable at the time of Plaintiff's Fourth and Fourteenth Amendment protected right was the further violation of these rights by Jackson County Sheriff John P. McDaniel and his Deputy Jeff Snell, as described above and in Counts below.

54. As a result of the violations in this count, Plaintiff suffered the injuries listed in par. 5 above.

55. The Geo Group Inc.'s conduct described above was in reckless disregard of, or callous indifference to, Plaintiff's Fourth and Fourteenth Amendment protected rights.

WHEREFORE, Plaintiff demands judgment in his favor and against the GEO

group for damages listed in par. 5 above and for punitive damages, attorneys fees and court costs, in amounts that are just and fair in the circumstances, all to be determined by the court.

## COUNT II–DAVIS AND TYUS

In this count Plaintiff Eddie L. Nabors sues Kenneth W. Davis and Jason R. Tyus.

56. This count incorporates paragraphs 1-48 restated herein by reference.

57. Kenneth Davis intentionally, or in the alternative recklessly, denied Plaintiff his Fourth and Fourteenth Amendment right to be free of unreasonable seizure and search of his person and personal effects without a warrant and save due process of law when Davis, all as described above, intentionally, or in the alternative recklessly, picked Nabors out of the incoming line of daily workers coming in to The GEO Group, Inc. prison in Jackson, County, Florida and caused his person to be seized and his person and personal effects to be searched without having probable cause to do so.

58. Jason R. Tyus, intentionally, or in the alternative in reckless disregard of Nabors' Fourth and Fourteenth Amendment rights to be free of unreasonable seizure and search, denied Nabors such rights when Tyus assisted Davis by participating and assisting Davis in the seizure and search of Nabors' person and personal effects as

described above.

59. Davis' and Tyus' conduct described above was in reckless disregard of, or callous indifference to, Plaintiff's Fourth and Fourteenth Amendment protected rights.

60. Davis' and Tyus' conduct causes them to be jointly liable because the damages caused by each cannot reasonably be separated from the other.

WHEREFORE, Plaintiff demands judgment in his favor and against Davis and Tyus jointly for damages listed in par. 5 above, punitive damages, reasonable attorneys fees and court costs, in an amount that is just and fair in the circumstances, all in amounts to be determined by the court.

COUNT III–JACKSON COUNTY DEPUTY SHERIFF

JEFF SNELL

In this count Plaintiff Eddie L. Nabors sues Jackson County Deputy Sheriff Jeff Snell.

61. This count incorporates paragraphs 1-48 restated herein, and in the sentences of the Count below against Sheriff John P. McDaniel, by reference.

62. Defendant Jeff Snell, an individual person, intentionally, or in the alternative recklessly, unreasonably seized and searched Plaintiff Eddie L. Nabors and his personal effects, as described above, without a warrant and without any

probable cause to believe that he had committed a crime or was committing a crime; and thus, he violated Plaintiffs Fourth and Fourteenth Amendment protected right to be free of unreasonable seizure and search save due process of law.

63. It was reasonably foreseeable that Snell's above described violation of Plaintiff's Fourth and Fourteenth Amendment rights would result in the subsequent violating of Plaintiff's Fourth and Fourteenth Amendment rights, as described above an in counts below, by Sheriff John P. McDaniel.

64. Deputy Jeff Snell's conduct described above was in reckless disregard of, or callous indifference to, Plaintiff's Fourth and Fourteenth Amendment protected rights.

WHEREFORE, Plaintiff demands judgment in his favor and against Jeff Snell, Deputy Sheriff to John P. McDaniel, for damages listed in par. 5 above, punitive damages, reasonable attorneys fees and court costs, in amounts that are just and fair in the circumstances, all in amounts to be determined by the court.

COUNT IV–FORMER JACKSON COUNTY SHERIFF

JOHN P. MCDANIEL

In this count Plaintiff Eddie L. Nabors sues former Jackson County Sheriff John P. McDaniel:

65 This count incorporates paragraphs 1-48 restated herein by reference.

66. Former Sheriff John P. McDaniel intentionally, or in the alternative recklessly, or in the alternative with deliberate indifference to the reasonable search and seizure rights of Plaintiff protected by the Fourth and Fourteenth Amendment to the U.S. Constitution, received highly exculpatory evidence--in the form of a Florida Department of Law Enforcement letter or lab report reporting that the substance from Plaintiff's car in the prison parking lot alleged to be cocaine was not cocaine nor any other illegal substance (see report at Exhibit A to this complaint) and did not turn it over to the state prosecutor or to Nabors until nine months after the Sheriff received the report.

66.1 There was no reason for the Sheriff to believe that the prosecutor had received a copy of the exculpatory letter or lab report at the same time the Sheriff received it.

67. Soon after receiving the report nine months after he should have received the report, the prosecutor dropped the case against Plaintiff, and Plaintiff's custody by the State of Florida then was terminated.

68. The Sheriff's not turning over the highly material exculpatory evidence to the prosecutor until approximately nine months after he received it, which was approximately ten months after Plaintiff's arrest, continued to cause Plaintiff to suffer unreasonable seizure in violation of his Fourth and Fourteenth Amendment

17

protected right to be free of unreasonable seizure and search.

69. The failure to turn over the highly material exculpatory evidence also caused Plaintiff to suffer continuing injuries which are those listed in par. 5 above.

70. The failure to give the assistant state attorney prosecuting Plaintiff or to the Plaintiff the material exculpatory FDLE letter or lave report was a reckless disregard of, or callous indifference to, Plaintiffs constitutionally protected right to liberty save due process of law.

WHEREFORE, Plaintiff demands judgment in his favor and against Sheriff John P. McDaniel, for damages listed in par. 5 above, punitive damages, reasonable attorneys fees and court costs, in amounts that are just and fair in the circumstance, all amounts to be determined by the court.

JURY TRIAL DEMANDED ON ALL ISSUES AND MATTERS.

Respectfully submitted by

/s/ Bruce Committe

Bruce Committe, Fla Bar 797502
401 N. 14th Avenue
Pensacola, FL 32501
PH 850 206 3756
Brucecommitte@hotmail.com
Attorney for Plaintiff Eddie L. Nabors


**FDLE**

| | | |
|---|---|---|
| Florida Department of Law Enforcement<br><br>Gerald M. Bailey<br>Commissioner | Pensacola Regional Operations Center<br>1301 North Palafox Street<br>Pensacola, Florida 32501-2640<br>1-800-226-8574<br>www.fdle.state.fl.us | Charlie Crist, *Governor*<br>Bill McCollum, *Attorney General*<br>Alex Sink, *Chief Financial Officer*<br>Charles H. Bronson, *Commissioner of Agriculture* |

December 17, 2007

| | | | |
|---|---|---|---|
| TO: | Sheriff John P. McDaniel<br>Jackson County Sheriff's Department<br>P.O. Box 919<br>Marianna, FL. 32447 | FDLE NUMBER:<br>SUBMISSION:<br>AGENCY NUMBER: | 20070206423<br>001<br>07110117 |
| ATTN: | JCDTF | | |
| SUBJECT(S): | NABORS, EDDIE | | |
| OFFENSE(S): | Drug Offenses<br>Jackson County<br>11/01/2007 | | |

SUBPOENAS PERTAINING TO THIS CASE
SHOULD REFER TO THE FDLE NUMBER.

Donald R. Walker
Crime Laboratory Analyst
Chemistry Section

### REFERENCE :

This report has reference to item(s) submitted to FDLE on December 3, 2007 by S. Basford.

### EXHIBIT(S) :

1   Unknown substance

### RESULT(S) :

1   No drugs per Florida Statute 893 were identified.

RECEIVED SEP 0 9 2008 STATE ATTORNEY

Exhibit A

Service • Integrity • Respect • Quality
EMS Report : Temp1105849 - Printed On : Monday, December 17, 2007 - Page 1 of 1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR JACKSON COUNTY

STATE OF FLORIDA,        CASE NO.: 07-0825CF

VS.
                         I)   POSSESSION OF
                              CONTROLLED SUBSTANCE
EDDIE L. NABORS,         II)  INTRODUCTION OF
Defendant.                    CONTRABAND INTO STATE
                              CORRECTIONAL INSTITUTION

## NOLLE PROSEQUI

THE STATE OF FLORIDA, by and through the undersigned Assistant State Attorney, hereby announces a Nolle Prosequi in the above case for the following reason(s):

> The evidence that was seized in this case was not Drugs, as defined by the Florida Statutes. Therefore, there is insufficient evidence to prove this case beyond a reasonable doubt.

THEREFORE, the State Attorney's Office announces a NOLLE PROSEQUI in this case.

This __12/15__ day of September, 2008.

STATE OF FLORIDA

_____
Henry M. Sims, FL BAR #0067891
Assistant State Attorney
PO BOX 956
Marianna, FL 32447
(850) 482-9555
(800) 344-7532

CERTIFIED A TRUE COPY
10-10-08
DALE RABON GUTHRIE
CLERK CIRCUIT COURT
JACKSON COUNTY, FLORIDA
By: _____ Deputy Clerk

Exhibit B